**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v. Criminal Action No. 3:98CR289

KENNETH M. MONTGOMERY, JR.

**MEMORANDUM OPINION**

The matter is before the Court on Kenneth M. Montgomery's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE ("Johnson-Based § 2255 Motion," ECF No. 175.)[1] Montgomery contends that his conviction on Count Five for use and carry of a firearm during and in relation crime of violence must be vacated in light of the Supreme Court's decisions in United States v. Davis, 139 S. Ct. 2319 (2019) and Johnson v. United States, 576 U.S. 591 (2015). For the reasons that follow, Montgomery's Johnson-Based § 2255 Motion will be denied.

## I. Pertinent Procedural History

Montgomery was charged in a Second Superseding Indictment with participating in a Racketeer-Influenced and Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(c) (Count One); the murder of John Henry White in aid of RICO (Count Two);

[1] By Memorandum Opinion and Order entered on March 5, 2020, the Court appointed counsel to represent Montgomery and ordered further briefing. (ECF Nos. 173, 174.)

the murder of John Henry White during a major drug trafficking offense, namely a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of cocaine base (Count Three); the murder of John Henry White during a crime of violence in violation of 18 U.S.C. 924(c) and (j) and 2 (Count Four); use and carry of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Five); possession with intent to distribute five grams or more of crack cocaine on March 1, 1996 (Count Six); assault with a dangerous weapon in aid of racketeering activity, specifically Montgomery beat a drug purchaser over the head with a table leg in an effort to collect a drug debt (Count Seven); collection of an extension of an extension of credit by extortionate means (Count Eight); assault with a dangerous weapon in aid of racketeering activity, specifically Montgomery fired a handgun at a drug purchaser who drove away without paying for the drugs (Count Nine); assault with a dangerous weapon in aid of racketeering activity, specifically in the Fall of 1995, Montgomery beat a drug purchaser with a handgun in an effort to collect a drug debt (Count Ten); collection of credit by extortionate means in the Fall of 1995 (Count Eleven); distribution of heroin (Count Twelve); one count of conspiracy to distribute crack cocaine (Count Thirteen); and, one count of conspiracy to distribute heroin (Count Fourteen). (ECF No. 34, at 1-22.)

On January 21, 1999, the Government dismissed Counts Four, Nine, and Twelve of the Superseding Indictment. (ECF No. 58, at 2.)

Following a jury trial, Montgomery was convicted of Counts One, Three, Five through Eight, Thirteen, and Fourteen.[2] (See ECF No. 63.) The Court sentenced Montgomery to life imprisonment to be followed by a consecutive sentence of five years for Count Five. (ECF No. 79, at 3.)

## II. Supreme Court "Crime Of Violence" Jurisprudence

In Johnson v. United States, 576 U.S. 591 (2015), the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process," id. at 606,[3] because the

---

[2] The jury found Montgomery not guilty of Counts Two, Ten, and Eleven. (ECF No. 63, at 2-3.)

[3] The ACCA provides that

> [i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). Under the Residual Clause of ACCA, the term violent felony had been "defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" Johnson, 576 U.S. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)).

Residual Clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), defined "violent felony" in an unconstitutionally vague manner for the reason that the Residual Clause encompassed "conduct that presents a serious potential risk of physical injury to another." Id. at 597-98 (citation omitted). Subsequently, in Welch v. United States, 578 U.S. 120 (2016), the Supreme Court held that "Johnson announced a substantive rule [of law] that has retroactive effect in cases on collateral review." Id. at 135.

Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment increases to at least seven years. Id. § 924(c)(1)(A)(ii). And, if the defendant discharges the firearm, the additional period of imprisonment increases to at least ten years. Id. § 924(c)(1)(A)(iii).

At the time of Montgomery's conviction on Count Five, the United States could demonstrate that an underlying offense constitutes a crime of violence if it established that the offense is a felony and satisfies one of two requirements. Namely, the statute defined a crime of violence as any felony:

> **(A)** [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "force clause")], or

> **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "residual clause")].

Id. § 924(c)(3). The Supreme Court recently invalidated the residual clause of § 924(c). United States v. Davis, 139 S. Ct. 2319, 2336 (2019) (holding that "§ 924(c)(3)(B) is unconstitutionally vague"). Thus, in order for Montgomery's § 924(c) conviction in Count Five to pass constitutional muster, it must be predicated on a crime of violence that satisfies the Force Clause of § 924(c).

In Borden v. United States, 141 S. Ct. 1817 (2021), the Supreme Court held that the ACCA's Force Clause's "definition of 'violent felony'—an offense requiring the 'use of physical force against the person of another'— [does not] include[] offenses criminalizing reckless conduct." Id. at 1825. The Court reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." Id. The Fourth Circuit has applied this reasoning to § 924(c)'s force clause and held that, "even if the statute governing the predicate offense requires that the proscribed conduct result in death, it must also indicate a higher degree of intent than reckless, negligent, or merely accidental conduct in order to satisfy the [force] clause." United States v.

Roof, 10 F.4th 314, 399-400 (4th Cir. 2021) (citing Borden, 141 S. Ct. at 1824; United States v. Runyon, 994 F.3d 192, 200 (4th Cir. 2021)).

## III. The Predicate Crimes For Count Five Identified In The Second Superseding Indictment And Jury Instructions

Count Five of the Second Superseding Indictment states, in pertinent part:

> On or about December 31, 1995, at Richmond, Virginia . . . Defendant MONTGOMERY did knowingly and unlawfully use and carry a firearm during and in relation to a crime of violence, namely each of the offenses described in Paragraphs 1(a), (b) and (c) of Count Four, each of which is a felony prosecutable in a Court of the United States.

(ECF 34, at 14) (emphasis added). The relevant paragraphs of Count Four charged:

> On or about December 31, 1995, in the Eastern District of Virginia, Defendant MONTGOMERY did knowingly and willfully,
>
> (a) conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, the activities of which affected interstate commerce, through a pattern of racketeering activity, to wit: the commission of the racketeering acts set forth in Paragraph 8 of Count One of this Indictment as Racketeering Acts One through Seven, as more particularly described in Count One of this Indictment, which is expressly incorporated by reference herein, in violation of Title 18, United States Code, Section 1962(c);
>
> (b) murder and cause the murder of John Henry White, in violation of § 18.2-32 of the Code of Virginia, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, as more particularly described in Count Two of this Indictment, which is expressly incorporated by reference herein, in

violation of Title 18, United States Code, Section 1959 (a)(1);

(c) while engaging in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A), to wit: a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack", in violation of Title 21 United States Code Sections 841(a)(1) and 846, as charged in Paragraph 8, Racketeering Act Six of Count One of this Indictment, which is realleged and incorporated herein, did knowingly, intentionally, and unlawfully kill and counsel, command, induce, procure, and cause the intentional killing of John White, and such killing resulted, in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code Section 2.

(Id. at 12-13) (emphasis added).

The jury instructions stated that:

THE CRIMES OF VIOLENCE AND DRUG TRAFFICKING OFFENSES ALLEGED WITH RESPECT TO COUNT FIVE ARE AS FOLLOWS:

1. THE DEFENDANT KNOWINGLY AND WILLFULLY PARTICIPATED IN A RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION AS CHARGED IN COUNT ONE OF THE INDICTMENT;

2. THE DEFENDANT DID MURDER AND CAUSE THE DEATH OF JOHN HENRY WHITE FOR THE PURPOSE OF MAINTAINING AND INCREASING HIS POSITION IN AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY AS CHARGED IN COUNT TWO OF THE INDICTMENT;

3. WHILE ENGAGING IN A CONSPIRACY TO DISTRIBUTE AND TO POSSESS WITH INTENT TO DISTRIBUTE IN EXCESS OF 50 GRAMS OF COCAINE BASE, THE DEFENDANT DID KILL JOHN HENRY WHITE AS CHARGED IN COUNT THREE OF THE INDICTMENT.

(Jury Instruction No. 69) (emphasis added).[4]

---

[4] With respect to the murder in Count Three, the jury instruction, provided in pertinent part, required the jury to find, "THAT THE INTENTIONAL KILLING WAS DONE KNOWINGLY AND UNLAWFULLY." (Jury Instruction No. 58.)

While the jury found Montgomery guilty of Count Five, the Special Verdict Form did not require the jury to identify which crime of violence it relied upon to find Montgomery guilty. (ECF No. 63, at 2.) However, the jury found Montgomery not guilty of Count Two of the Second Superseding Indictment. (Id.) Thus, the Special Verdict Form indicates that the jury relied upon the RICO charge in Count One or the murder during the conspiracy to distribute cocaine base charged in Count Three to support its conviction of Montgomery on Count Five. Furthermore, in finding Montgomery guilty of Count One, the jury found that Montgomery had committed Racketeering Act One, the second-degree murder of John Henry White. (ECF No. 63, at 1.)

## IV. Murder During A Conspiracy To Distribute Cocaine Base Qualifies As A Crime Of Violence Under The Force Clause

The Fourth Circuit has determined that generic, federal second-degree "murder is a crime of violence under § 924(c)'s force clause because it '[h]as an element the use, attempted use, or threatened use of physical force against the person.'" In re Irby, 858 F.3d 231, 234-35 (4th Cir. 2017) (alteration in original) (citing In re Hubbard, 825 F.3d 225, 229 (4th Cir. 2016)). Further, "the crime of first-degree murder under Virginia law qualifies categorically as a crime of violence under the force clause." United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019). In reaching that conclusion, the Fourth Circuit noted that:

> A conviction for first-degree murder under Virginia law requires the "willful, deliberate, and premeditated" killing of another. Va. Code § 18.2-32. Murder "requires the use of force capable of causing physical pain or injury to another person" irrespective whether that force is exerted directly or indirectly by a defendant.

Id. (citing In re Irby, 858 F.3d at 236, 238).

Montgomery contends that, "[b]ecause second-degree murder can be committed recklessly, it cannot categorically constitute a crime of violence." (ECF No. 178, at 3.) As explained below, Montgomery is wrong.

Virginia classifies Criminal homicides as follows:

> 1. Capital murder,
> 2. First-degree murder,
> 3. Second-degree murder,
> 4. Voluntary manslaughter, and
> 5. Involuntary manslaughter.

Essex v. Commonwealth, 322 S.E.2d 216, 219 (Va. 1984). In Virginia, malice is "a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished." Id. at 219-20 (citing Moxley v. Commonwealth, 77 S.E.2d 389, 393 (Va. 1953)). Malice requires that a wrongful act be done

> "wilfully or purposefully." This requirement of volitional action is inconsistent with inadvertence. Thus, if a killing results from negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be implied. In order to elevate the crime to second-degree murder, the defendant must be shown to have wilfully or purposefully, rather than negligently, embarked upon a

> course of wrongful conduct likely to cause death or great bodily harm.

Id. at 220 (internal citation omitted).

Montgomery contends that, "[s]econd degree murder in Virginia can be committed with no more than a reckless state of mind." (ECF No. 178, at 11 (citing Pierce v. Commonwealth, 115 S.E. 686, 688 (Va. 1923)). The Pierce case involved a shopkeeper who set a trap gun which then killed a police officer who went to check to see if the store was locked. Pierce, 115 S.E. at 636-39. Montgomery quotes one of the jury instructions to support his assertion that second-degree murder "can be based on evidence showing 'a wanton and reckless indifference to the rights of others.'" (ECF No. 178, at 11 (quoting Pierce, 115 S.E. at 688).)

Initially, the Court notes that in Pierce, the Supreme Court of Virginia addressed the sufficiency of the evidence not the accuracy of the jury instructions. 115 S.E. 636-39. Further, the relevant jury instruction did not permit the jury to convict the defendant of second-degree murder merely if he placed the trap gun in a wanton and reckless indifference to the rights of others. Rather, in order to find the defendant guilty of murder, the jury was required to find,

> that the defendant did set the trap gun in such a place and in such a manner and under such circumstances as to knowingly endanger the life of innocent persons, and with a wanton and reckless indifference to the rights of others, under such circumstances as to evince a heart regardless of social duty and fatally bent on mischief,

> and as a result of the setting of said gun under such circumstances the deceased was shot and killed by the said trap gun, then such killing is malicious, and the defendant is guilty of murder in the second degree, and the jury should fix his punishment at confinement in the penitentiary for not less than 5 nor more than 20 years.

Id. at 639.

The Supreme Court of Virginia provided the following example to illustrate that second-degree murder does not include merely reckless conduct:

> [For] second-degree murder[] the victim must be shown to have died as a result of the defendant's conduct, and the defendant's conduct must be shown to be malicious. In the absence of express malice, this element may only be implied from conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken. Thus, for example, one who deliberately drives a car into a crowd of people at a high speed, not intending to kill or injur[e] any particular person, but rather seeking the perverse thrill of terrifying them and causing them to scatter, might be convicted of second-degree murder if death results. One who accomplishes the same result inadvertently, because of grossly negligent driving, causing him to lose control of his car, could be convicted only of involuntary manslaughter. In the first case the act was volitional; in the second it was inadvertent, however reckless and irresponsible.

Essex, 322 S.E.2d at 220; see Maddox v. Commonwealth, No. 1129-99-4, 2000 WL 1052151, at *3 (Va. Ct. App. Aug. 1, 2000) ("Reckless conduct, however gross, is not murder." (citing Essex, 322 S.E.2d at 220); Porter v. Commonwealth, 435 S.E.2d 148, 150-51 (Va. Ct. App. 1993) (reversing second-degree murder conviction where the evidence failed to show that defendant acted maliciously as opposed to reckless or negligently). In sum, second-degree murder

in Virginia does not embrace volitional acts that are merely reckless. Therefore, Montgomery's second-degree murder of White during and in relation to Montgomery's conspiracy to distribute fifty grams of more of cocaine base qualifies as a valid crime of violence predicate for the § 924(c) conviction in Count Five. See United States v. Roof, 10 F.4th 314, 399-400 (4th Cir. 2021) (citing United States v. Borden, 141 S. Ct. 1817, 1824 (2021); United States v. Runyon, 994 F.3d 192, 200 (4th Cir. 2021)).

## V. It Is Unclear Whether Montgomery's Participation Racketeering-Influenced and Corrupt Organization Constitutes A Valid Crime of Violence Predicate

Recently, the Fourth Circuit determined that conspiracy to commit Hobbs Act robbery is insufficient to satisfy the Force Clause. See United States v. Simms, 914 F.3d 229 (4th Cir. 2019). In Simms, the defendant pled guilty to conspiracy to commit Hobbs Act robbery and to brandishing a firearm during and in relation to a "crime of violence," but later challenged his brandishing conviction on the theory that Hobbs Act conspiracy could not be considered a "crime of violence" under 18 U.S.C. § 924(c)(3). 914 F.3d at 232-33. The parties and the Fourth Circuit agreed that,

> conspiracy to commit Hobbs Act robbery—does not categorically qualify as a crime of violence under the [Force Clause], as the United States now concedes. This is so because to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not

invariably require the actual, attempted, or threatened use of physical force.

Id. at 233-34 (citations omitted).

Additionally, "every [Circuit Court] to have considered post-Davis whether RICO conspiracy ('aggravated' or not) is a crime of violence has held that it is not. United States v. Capers, 20 F.4th 105, 122 (2d Cir. 2021) (citing United States v. Simmons, 11 F.4th 239, 254-61 (4th Cir. 2021); United States v. McClaren, 13 F.4th 386, 412-14 (5th Cir. 2021); United States v. Green, 981 F.3d 945, 951-52 (11th Cir. 2020); United States v. Jones, 935 F.3d 266, 271 (5th Cir. 2019); United States v. Davis, 785 F. App'x 358, 360-61 & n.2 (9th Cir. 2019)). This is so because, "as the Supreme Court's decision in Davis reasoned, a conspiracy offense cannot categorically involve the use of force, since its key element is simply an agreement to commit a crime." United States v. Martinez, 991 F.3d 347, 354 (2d Cir.) (citations omitted), cert. denied, 142 S. Ct. 179 (2021).

Citing the above line of authority, Montgomery contends that his § 924(c) conviction "is void because the 'crime of violence' element cannot be satisfied here. The predicate offense of RICO conspiracy does not qualify as a 'crime of violence' as a matter of law." (ECF No. 178, at 4.) However, Montgomery was indicted and convicted of participating in Racketeering-Influenced and

Corrupt Organization, in violation of 18 U.S.C. § 1962(c), not conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d).[5]

A defendant violates 18 U.S.C. § 1962(c):

> by participating in the affairs of an 'enterprise' - defined in § 1961(4) to encompass almost any form of organized human activity - through a 'pattern of racketeering activity,' defined in § 1961(5) to include two or more acts of 'racketeering activity,' defined in § 1961(1) to include many acts which do not involve the use of force by any stretch of the imagination. Thus, considered in the abstract, § 1962(c) arguably covers both forcible and non-forcible crimes.

Martinez, 991 F.3d at 356-57 (internal footnote omitted. Applying circuit precedent, the Second Circuit observed "that whether a substantive RICO offense is or is not a crime of violence is determined by the nature of the predicate offenses constituting the charged pattern of racketeering." Id. at 358 (citing United States v. Ivezaj, 568 F.3d 88, 95-96 (2d Cir. 2009)); see Ivezaj, 568 F.3d at 96 ("Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged.").[6] The Second Circuit then

---

[5] The Court contributed to this confusion when at one point in reciting the procedural history of Montgomery's charges it erroneously referred to the conviction in Count One as "conspiracy to violate R.I.C.O." United States v. Montgomery, No. 3:98CR289, 2020 WL 1068242, at *2 (E.D. Va. Mar. 5, 2020).

[6] The Second Circuit conceded that recent Supreme Court cases discussing the categorical and modified categorical approach for analyzing crimes "certainly called into question, if not the premises directly underlying Ivezaj, many of the principles and

concluded that, "in a substantive RICO case in which the jury was required to find, or the defendant to admit, a predicate act that by its nature and elements requires the use of force, the RICO offense would be, under the logic of Ivezaj, a violent crime." Martinez, 991 F.3d at 359 (citing Ivezaj, 568 F.3d at 96). That was the case with Martinez, who had pled to committing murder under New York law as one of the necessary racketeering predicates for his RICO conviction. Id. at 357.

In the end, the Second Circuit found that Martinez had not established plain error. Id. at 357-59. In reaching the conclusion, the Second Circuit observed:

> RICO is a highly unusual statute that encompasses within its terms not only a wide variety of conduct but a wide variety of specifically defined criminal acts whose separate elements are defined by state and federal statutes incorporated by reference into RICO's defined elements. The Supreme Court has never addressed how the categorical or modified categorical approach applies to such a statute. Nor has this Court had occasion to address whether Ivezaj's approach of determining the status of a substantive RICO offense by looking to the predicate acts that make up the charged pattern of racketeering activity remains good law under the Supreme Court's more recent explanations of the categorical and modified categorical approaches. Thus, whether or not Martinez is correct that Ivezaj does not permit a finding that the substantive RICO offense charged in the information to which he pleaded guilty is categorically a crime of violence, and/or that Ivezaj was wrongly decided based on current Supreme Court case law, such a conclusion is by no means "clear or obvious," under the law as it stands today.

---

precedents that formed the legal background against which the case was decided." Martinez, 991 F.3d at 356.

Martinez, 991 F.3d at 357-58.

The parties have not addressed whether Montgomery's substantive RICO crime qualifies as a crime of violence. Ultimately, as discussed below, it unnecessary for this Court to ascertain whether Montgomery's substantive RICO crime qualifies as a crime of violence because, assuming that it did not qualify as a crime of violence predicate, any error was harmless.

**VI. Any Error With Respect To Count Five Was Harmless**

"[H]abeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Davis v. Ayala, 576 U.S. 257, 267 (2015) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). This standard requires the habeas petitioner to show that "[t]here [is] more than a 'reasonable possibility' that the error was harmful." United States v. Said, 26 F.4th 653, 660 (4th Cir. 2022) (alterations in original) (quoting Davis, 576 U.S. at 268). Under this standard, "it is proper to look at the record to determine whether the [alleged] invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction - - or whether the jury instead (or also) found the defendant guilty under a valid theory." Granda v. United States, 990 F.3d 1272, 1294 (11th Cir. 2021), cert. denied, 142 S. Ct. 1233 (2022).

Therefore, "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate." Said, 26 F.4th at 659 (citing United States v. Crawley, 2 F.4th 257, 263 (4th Cir. 2021), cert. denied, 142 S. Ct. 819 (2022); United States v. Hare, 820 F.3d 93, 106 (4th Cir. 2016)). Here, the Special Verdict Form did not require the jury to identify which predicate crimes of violence it relied upon to find Montgomery guilty of Count Five. (ECF No. 63, at 2.) Montgomery asserts that, "because it cannot be said that with certainty that [his] conviction on the § 924(c) charge necessarily rested on" the allegedly invalid RICO predicate rather than the valid murder during and in relation to the conspiracy to distribute cocaine base, his "conviction on Count Five cannot be sustained." (ECF No. 178, at 10-11.) This argument, however, fails to appreciate the burden that Montgomery has in demonstrating actual prejudice at this stage.

"[M]ere 'uncertainty as to which . . . [predicate or predicates] the jury [relied on] when it found [the defendant] guilty of the § 924(c) count[]' does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for habeas relief." Said, 26 F.4th at 661-62 (citing Davis, 576 U.S. at 268; United States v. Ali, 991 F.3d 566, 575 (4th Cir. 2021). At this stage, to meet his burden, Montgomery "must show 'more than a reasonable possibility' that the jury only

found him guilty" of Count Five because it improperly considered Count One to be a crime of violence. Id. at 662 (citing Davis, 576 U.S. at 268). This he cannot do. The jury found Montgomery guilty on Count Three, the murder of John Henry White during a major drug trafficking offense, namely a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of cocaine base. As discussed above, that crime constitutes a valid predicate crime of violence for Count Five. Commonsense dictates that the jury had at least that valid predicate crime of violence in mind when it convicted Montgomery on Count Five. See id. at 664 (finding error harmless when the defendant "pointed to nothing to eliminate the commonsense prospect that the jury relied on one or more of the valid predicates when it convicted him of the § 924 charges"). Accordingly, Montgomery has not demonstrated that he was prejudiced by the Court's instruction that he could be found guilty of Count Five because of the inclusion of the RICO charge as a valid predicate crime of violence. For the foregoing reasons, Montgomery's Johnson-Based § 2255 Motion (ECF No. 175) will be denied.

**VII. Montgomery's Outstanding Motions**

By Memorandum Opinion and Order entered on November 21, 2001, the Court denied Montgomery's first 28 U.S.C. § 2255 motion. (ECF Nos. 106, 107.) Thereafter, Montgomery filed successive,

unauthorized 28 U.S.C. § 2255 motions, which the Court dismissed without prejudice for lack of jurisdiction. (ECF Nos. 108, 109, 147, 148.)

By Order entered on July 24, 2013, the United States Court of Appeals for the Fourth Circuit granted Kenneth Montgomery authorization to file a successive 28 U.S.C. § 2255 motion. (ECF No. 119.) Montgomery eventually filed a 28 U.S.C. § 2255 wherein he asserted that he was entitled to relief in light of Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012) ("Miller-Based § 2255 Motion," ECF No. 124). In Miller, the Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465.

On November 14, 2016, the Court denied Montgomery's Miller Based § 2255 Motion because,

> [a]lthough the Court ultimately sentenced Montgomery to a term of life imprisonment for Counts One and Three, the sentence of life imprisonment was not mandatory. Thus, Montgomery's Eighth Amendment challenge under Miller fails because he "was not sentenced pursuant to any statute or guideline that mandated a sentence of life without parole."

United States v. Montgomery, No. 3:98CR289, 2016 WL 6693082, at *2 (E.D. Va. Nov. 14, 2016) (quoting Evans-Garcia v. United States, 744 F.3d 235, 240 (1st Cir. 2014)).

On August 3, 2016, the United States Court of Appeals for the Fourth Circuit authorized Montgomery to file a successive 28 U.S.C. § 2255 motion raising a claim based on Johnson v. United States, 576 U.S. 591 (2015), which the Court denied in this opinion. (ECF No. 146.) After receiving that authorization, Montgomery moved to amend his authorized Johnson-Based § 2255 Motion to again bring a claim that his life sentences are unconstitutional in light of Miller v. Alabama ("Motion to Amend, ECF No. 161).

A motion to amend may be denied if it would be futile to permit the amendment. United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000). For the reasons stated previously, see Montgomery, 2016 WL 6693082, at *2, Montgomery fails to demonstrate that any amendment to raise a Miller-based claim would not be futile. Accordingly, the Motion to Amend (ECF No. 161) will be denied.

Montgomery also has filed two motions seeking to reopen the Miller-Based § 2255 Motion. ("Motions to Reopen," ECF Nos. 159, 160.) Montgomery has identified no rule of procedure that would permit him to reopen that motion. Moreover, Montgomery has not demonstrated any error in the Court's decision that he seeks to reopen. Accordingly, Montgomery's Motions to Reopen (ECF Nos. 159, 160) will be denied.

## VIII. Conclusion

The MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF No. 175) will be denied. The action will be dismissed. The Motion Requesting Leave To Amended The Petitioner's Authorized Section 2255 Motion Which Is Currently Before This Court (ECF No. 161), Montgomery's Motion to Amend (ECF No. 161) and the Letter Motions to Reopen Motion to Vacate, Set Aside, or Correct Sentence (ECF Nos. 159, 160) will be denied. A certificate of appealability will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to Montgomery and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 18, 2022